**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| BOBBY B. MARTINEZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF VALLEY, NEBRASKA; MELANIE HAYDEN, individually; JAKE LEWIS, individually; and LINDA LEWIS, individually,<br><br>Defendants. | 8:26-cv _______<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Bobby B. Martinez, by and through undersigned counsel, brings this action against Defendants City of Valley, Nebraska, and Council Members Melanie Hayden, Jake Lewis, and Linda Lewis, in their individual capacities, and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil rights action arising out of Defendants' unlawful, racially discriminatory, and retaliatory campaign to remove Plaintiff Bobby B. Martinez from his position as Chief of Police of the City of Valley, Nebraska, in violation of his rights under the United States Constitution and federal and state law.

2. Plaintiff, a Hispanic man, served the City of Valley with distinction.

3. Following a change in the composition of the City Council, the individual Defendants orchestrated a coordinated effort to force Plaintiff out of office.

4. They deliberated about his employment in secret and outside of any public meeting; bypassed the mandatory, for-cause removal procedure the law guarantees the Chief of Police; and

singled out Plaintiff and City Administrator Cameron Gales—both racial minorities—for removal while similarly situated non-minority officials were left untouched.

5. Defendants' conduct deprived Plaintiff of constitutionally protected property and liberty interests without due process of law, denied him the equal protection of the laws, retaliated against him for protected activity, and created working conditions so intolerable that Plaintiff was constructively discharged.

6. Plaintiff brings claims under 42 U.S.C. §§ 1981, 1983, and 1985, Title VII of the Civil Rights Act of 1964, and Nebraska law, and seeks declaratory and injunctive relief, reinstatement, compensatory and punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3)–(4) because this action arises under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

8. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

9. This Court is authorized to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because all Defendants reside in this District and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper under 42 U.S.C. § 2000e-5(f)(3).

11. Plaintiff has satisfied all administrative prerequisites to suit, as set forth below.

## PARTIES

12. Plaintiff Bobby B. Martinez is a natural person and, at all relevant times, a resident of Douglas County, Nebraska.

13. At all relevant times until his constructive discharge, Plaintiff was employed as the Chief of Police of the City of Valley, Nebraska.

14. Defendant City of Valley, Nebraska (the "City") is a municipal corporation and political subdivision organized under the laws of the State of Nebraska, located in Douglas County, Nebraska.

15. The City is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and at all relevant times employed fifteen or more employees.

16. The City acts through its City Council, Mayor, and other officials.

17. Defendant Melanie Hayden is, and at all relevant times was, a member of the Valley City Council.

18. Defendant Melanie Hayden is sued in her individual capacity.

19. At all relevant times Defendant Melanie Hayden acted under color of state law.

20. Defendant Jake Lewis is, and at all relevant times was, a member of the Valley City Council.

21. Defendant Jake Lewis is sued in his individual capacity. At all relevant times Defendant Jake Lewis acted under color of state law.

22. Defendant Linda Lewis is, and at all relevant times was, a member of the Valley City Council.

23. Defendant Linda Lewis is sued in her individual capacity.

24. At all relevant times Defendant Linda Lewis acted under color of state law.

25. At all relevant times, the individual Defendants, together with a majority of the City Council, possessed final policymaking authority for the City with respect to the employment, discipline, and removal of the Chief of Police, and their acts and decisions constitute the official policy of the City for purposes of municipal liability.

## ADMINISTRATIVE EXHAUSTION

26. Plaintiff timely filed a Charge of Discrimination against the City, dual-filed with the Nebraska Equal Opportunity Commission and the U.S. Equal Employment Opportunity Commission ("EEOC") and designated EEOC Charge No. 32E-2025-00415 (NEOC No. 1-24/25-4-55242-RS), alleging discrimination on the basis of national origin.

27. The claims asserted in this action are within the scope of that charge and of the investigation that reasonably grew out of it.

28. The EEOC issued Plaintiff a Notice of Right to Sue dated May 12, 2026, which Plaintiff received on or about May 18, 2026.

29. This Complaint is filed within ninety (90) days of Plaintiff's receipt of that Notice.

30. Plaintiff has exhausted his administrative remedies as to his Title VII claims that are within the scope of his charge and the ensuing investigation.

31. Plaintiff's claims under 42 U.S.C. §§ 1981, 1983, and 1985 are not subject to any administrative-exhaustion requirement.

32. Plaintiff served written notice of his tort claims on the City in February 2025 in accordance with the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-928, and is presenting supplemental claims to the City arising from his subsequent constructive discharge.

33. Plaintiff's state-law claim asserted herein against the individual Defendants, who acted outside the scope of their offices and for personal purposes, is not subject to the Act's presentation requirements.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Position and Statutory Protections

34. Plaintiff served as the Chief of Police of the City of Valley. In that role he was responsible for the management and supervision of the City's police department and the protection of public safety.

35. Under Nebraska law, the Chief of Police may be removed only in accordance with the procedure set forth in Neb. Rev. Stat. § 17-107(3)(b), and as further provided in Valley Municipal Code § 32.22.

36. That procedure requires, among other things:

a. the filing of a written accusation against the Chief;

b. a good-faith effort by the Mayor to meet with the person making the accusation;

c. the Mayor's decision either to dismiss the accusation, conduct an investigation, or schedule an informal hearing before the Mayor; and

d. only after such a hearing, an appeal to the City Council sitting as an appellate body—not as an initiating authority.

37. By virtue of these statutory and ordinance-based for-cause protections, Plaintiff possessed a legitimate claim of entitlement to, and a constitutionally protected property interest in, his continued employment as Chief of Police.

### B. The Change in Council and the Campaign to Remove Plaintiff

38. Following the 2024 municipal election, the composition of the Valley City Council changed, and Defendants Hayden, Jake Lewis, and Linda Lewis took or consolidated their seats on the Council.

39. Almost immediately, the individual Defendants embarked on a deliberate and coordinated campaign to remove Plaintiff from his position as Chief of Police.

40. The campaign was not based on any legitimate, lawful, or documented deficiency in Plaintiff's performance.

41. Beginning in November 2024 and continuing thereafter through 2025, the individual Defendants and other members of the Council deliberated and discussed Plaintiff's employment and proposed removal in secret, outside of any duly noticed public meeting, including discussions occurring in November 2024, December 2024, and January 2025.

42. At a duly noticed public meeting of the City Council held on February 6, 2025, an independent attorney retained by the Mayor presented, on the record and in the presence of the individual Defendants, a formal legal opinion concerning the Council's authority over the appointment and removal of city officers.

43. The Mayor expressly authorized the attorney to address the Council and the public without restriction, and his remarks were made in open session.

44. The attorney advised the Council, among other things, that:

a. city officers may be removed only by the Mayor with the consent of the Council, such that any removal initiated by the Council itself "would be illegal" and ultra vires and would subject the City to potential liability;

b. the Chief of Police may be removed only pursuant to the written-accusation procedure prescribed by statute, in which the Council has no role unless and until an appeal is taken;

c. the City's personnel manual, as then written, waived the City's right to at-will employment, such that employees could be discharged only for specified causes; and

d. Plaintiff and Mr. Gales held valid appointments that could not lawfully be terminated outside these procedures.

45. The attorney further advised the Council, expressly noting that Plaintiff and Mr. Gales are minorities, that their removal would expose the City to an employment-discrimination action, liability for the plaintiffs' attorneys' fees, and an order of reinstatement with back pay.

46. At the same February 6, 2025 meeting, Defendants Hayden, Jake Lewis, and Linda Lewis, voting together as a three-member bloc, overrode the Mayor's veto of an unrelated resolution by a 3–1 vote, reflecting their coordinated operation as a council majority acting in opposition to the Mayor.

47. These private deliberations were reached, coordinated, and memorialized through written communications among the individual Defendants and other City officials, including text messages exchanged among Defendants Hayden, Jake Lewis, and Linda Lewis, and including messages exchanged in or about April 2025, by which they agreed upon and advanced Plaintiff's removal.

48. In furtherance of the campaign, the individual Defendants proposed and pursued an ordinance introduced in or about November 2025 that would have subjected the police department and Plaintiff's authority as Chief to direct Council oversight.

49. The measure was designed to undermine Plaintiff's authority, manufacture pretext for his removal, or force him from office.

50. Notwithstanding this express, public advice of counsel, the individual Defendants persisted in their campaign to remove Plaintiff, including through the private communications

exchanged in or about April 2025 and the ordinance proposed in or about November 2025 alleged below.

51. From and after February 6, 2025, each individual Defendant acted with actual knowledge that removal of Plaintiff outside the mandatory statutory procedure was unlawful, and their continued pursuit of his removal was willful, deliberate, and undertaken in conscious disregard of Plaintiff's clearly established rights.

52. The individual Defendants bypassed entirely the mandatory removal procedure required by Neb. Rev. Stat. § 17-107(3)(b) and Valley Municipal Code § 32.22.

53. No proper written accusation was filed, no good-faith mayoral meeting or investigation was conducted, and no informal hearing before the Mayor preceded the Council's actions.

54. Instead, the Council improperly arrogated to itself the role of initiating authority.

55. Because Defendants acted outside the scope of their lawful authority and in derogation of the exclusive statutory procedure, their actions to remove or force out Plaintiff were ultra vires, void, and unenforceable.

**C. Racially Discriminatory and Selective Targeting**

56. Plaintiff is a Hispanic member of a protected class. City Administrator Cameron Gales, who was simultaneously targeted for removal by the same Defendants, is also a member of a racial minority.

57. The individual Defendants selectively targeted Plaintiff and Mr. Gales, the two most senior minority officials in the City's government, for removal, while similarly situated non-minority officials and employees were not subjected to comparable treatment.

58. This disparate and selective treatment gives rise to an inference that Defendants' actions were motivated by race and/or national origin.

59. Defendants' campaign included conduct reflecting overt racial animus, including a photograph depicting Defendant Hayden using a racial slur.

60. The pre-selection of Plaintiff's successor demonstrates that his removal was predetermined and that any justification later offered by Defendants is pretextual.

61. Before any lawful removal process was initiated, the individual Defendants had already discussed and identified an intended replacement for Plaintiff.

62. This demonstrates that Plaintiff's removal was predetermined and that any justification later offered by Defendants is pretextual.

63. Defendant Linda Lewis's nephew is a Lieutenant with the Douglas County Sheriff's Office and stood to benefit personally from Plaintiff's removal and from the resulting changes to the City's law-enforcement arrangements.

64. Defendant Linda Lewis therefore had a personal stake in the outcome independent of any legitimate municipal interest.

65. Defendant Hayden contacted Plaintiff's former employer, the Morrill County Sheriff's Office, and sought to obtain Plaintiff's call logs from Douglas County Sheriff's Office dispatch, in an effort to obtain derogatory information with which to discredit Plaintiff.

**D. Harm to Plaintiff and Constructive Discharge**

66. Defendants' sustained campaign of harassment, public targeting, and unlawful removal efforts created working conditions that were objectively intolerable.

67. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress and physical manifestations of that distress, for which he sought and received medical treatment, including an office visit on or about September 30, 2025 and emergency treatment on or about October 11, 2025, and his health continued to deteriorate as Defendants' campaign persisted into 2026.

68. The conditions imposed by Defendants became so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

69. Plaintiff remained in his position while the administrative process ran its course; only after that process concluded without relief did he conclude that no correction was forthcoming.

70. On May 29, 2026, Plaintiff was constructively discharged from his position as Chief of Police.

71. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, loss of future earning capacity, damage to his professional reputation, emotional distress, and other compensable harm.

**COUNT I**
***Deprivation of Procedural Due Process — 42 U.S.C. § 1983***
**(Against the Individual Defendants in their individual capacities)**

72. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

73. Plaintiff possessed a constitutionally protected property interest in his continued employment as Chief of Police, arising from the for-cause removal protections of Neb. Rev. Stat. § 17-107(3)(b) and Valley Municipal Code § 32.22.

74. The Fourteenth Amendment prohibits the deprivation of that property interest without due process of law, including notice and a meaningful opportunity to be heard.

75. Acting under color of state law, Defendants deprived Plaintiff of his protected property interest by initiating and pursuing his removal, and by creating conditions resulting in his constructive discharge, without affording him the written accusation, investigation, mayoral hearing, and appellate process guaranteed by law, and without any other constitutionally adequate process.

76. Plaintiff's separation from employment was not voluntary. Defendants deliberately created or maintained working conditions so intolerable that a reasonable person would have felt compelled to resign, intending to force Plaintiff from office or with that foreseeable result.

77. Plaintiff's resulting constructive discharge was the deliberate act of the City's decisionmakers and is the legal equivalent of a termination, entitling him to constitutionally adequate process.

78. The deprivation of Plaintiff's protected interests was effected by officials vested with final authority over the employment and removal of the Chief of Police, and was a foreseeable consequence of their considered decisions rather than the result of random or unpredictable conduct by subordinate employees.

79. A meaningful pre-deprivation hearing was therefore both practicable and constitutionally required, and the post-deprivation remedies available under state law are inadequate to redress the deprivation.

80. This allegation is pleaded in the alternative to Plaintiff's allegations that Defendants exceeded their lawful authority, pursuant to Rule 8(d) of the Federal Rules of Civil Procedure.

81. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages as alleged herein.

**COUNT II**
***Denial of Equal Protection — 42 U.S.C. § 1983***
**(Against the Individual Defendants in their individual capacities and the City of Valley)**

82. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

83. The Equal Protection Clause of the Fourteenth Amendment guarantees Plaintiff the right to be free from intentional discrimination on the basis of race and national origin.

84. Acting under color of state law, Defendants intentionally treated Plaintiff differently from similarly situated non-minority officials and employees because of his national origin.

85. Defendants' discriminatory conduct was purposeful, intentional, and motivated by racial animus.

86. Defendants' discriminatory intent is further shown by the simultaneous targeting of the only two senior minority officials in City government; the abandonment of the lawful, established removal procedures otherwise applicable; the absence of any legitimate, performance-based justification; the timing of the campaign immediately following the change in the Council's composition; and the City's replacement of Plaintiff, following his constructive discharge, with a white individual selected from a pool of finalists all of whom were white.

87. The City of Valley is liable for this denial of equal protection because the discrimination was carried out by, and pursuant to the decisions of, the City's final policymakers, as alleged in the municipal-liability count below, and therefore constitutes the official policy of the City under Monell v. Department of Social Services, 436 U.S. 658 (1978).

88. This municipal claim is independent of, and not subject to the administrative-exhaustion requirements of, Title VII.

89. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages as alleged herein.

**COUNT III**
***First Amendment Retaliation — Free Speech and Political Association — 42 U.S.C. § 1983***
**(Against the Individual Defendants in their individual capacities)**

90. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

91. Plaintiff engaged in activity protected by the First Amendment by reporting to the Mayor of the City of Valley, and otherwise speaking out about, the individual Defendants' unlawful

conduct, including their disregard of the mandatory removal procedures and their unlawful closed-session deliberations.

92. That speech exposed governmental illegality and addressed matters of serious public concern to the citizens of Valley, and was not merely a personal employment grievance.

93. Plaintiff's speech was on a matter of public concern and was made as a citizen, not pursuant to his official duties, or is otherwise constitutionally protected.

94. Following Plaintiff's constructive discharge, the City replaced Plaintiff as Chief of Police with a white individual.

95. Every finalist considered to replace Plaintiff was white.

96. In the alternative, and independently, Defendants violated Plaintiff's First Amendment right of political association.

97. Plaintiff's position as Chief of Police is not one for which party affiliation, political allegiance to the newly seated Council majority, or political loyalty is an appropriate requirement for the effective performance of the office.

98. Defendants nonetheless targeted Plaintiff for removal because of his perceived political affiliation, his lack of allegiance to the new Council majority, and/or his association with the prior administration.

99. Defendants took adverse action against Plaintiff, including pursuing his removal and constructively discharging him, because of, and in retaliation for, his protected speech and/or protected political association.

100. That protected activity was a substantial or motivating factor in Defendants' conduct.

101. Defendants would not have taken the same actions in the absence of Plaintiff's protected activity, and their proffered justifications are pretextual.

102. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages as alleged herein.

## COUNT IV
### *Conspiracy to Interfere with Civil Rights — 42 U.S.C. § 1985(3)*
### (Against the Individual Defendants in their individual capacities)

103. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

104. Two or more of the Defendants, together with others, reached an agreement and acted in concert for the purpose of depriving Plaintiff, either directly or indirectly, of the equal protection of the laws and of equal privileges and immunities under the law.

105. The conspiracy was motivated by racial animus and by class-based, invidiously discriminatory intent directed at Plaintiff as a member of a protected class.

106. In furtherance of the conspiracy, the Defendants committed overt acts, including conducting secret deliberations concerning Plaintiff's removal in November 2024, December 2024, and January 2025; reaching and coordinating their agreement through private text messages and other communications among themselves, including messages exchanged in or about April 2025; proposing and pursuing the November 2025 ordinance targeting Plaintiff's authority; seeking derogatory information about Plaintiff from his former employer; and bypassing the lawful removal process to force Plaintiff from office.

107. In forming and carrying out this conspiracy, the individual Defendants acted out of personal bias and for personal purposes beyond the scope of their legitimate official duties, and were motivated by independent personal animus toward Plaintiff, such that their conduct is not shielded by the intracorporate-conspiracy doctrine.

108. As a direct and proximate result of the conspiracy, Plaintiff was injured in his person and property, was deprived of his rights, and has suffered damages as alleged herein.

**COUNT V**
***Civil Conspiracy to Deprive Civil Rights — 42 U.S.C. § 1983***
**(Against the Individual Defendants in their individual capacities)**

109. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

110. The individual Defendants, acting under color of state law, reached a mutual understanding and agreement to deprive Plaintiff of rights secured by the Fourteenth Amendment, including his rights to due process and to the equal protection of the laws.

111. In furtherance of the agreement, the Defendants committed overt acts, including the secret deliberations, coordinated communications, and unlawful removal efforts alleged above.

112. The conspiracy resulted in the actual deprivation of Plaintiff's constitutional rights and caused him injury.

113. This claim is pleaded in addition to, and in the alternative to, Plaintiff's claim under 42 U.S.C. § 1985(3), and does not depend on proof of class-based, racial animus.

114. As a direct and proximate result of the conspiracy, Plaintiff has suffered damages as alleged herein.

**COUNT VI**
***Municipal Liability — 42 U.S.C. § 1983 (Monell)***
**(Against the City of Valley)**

115. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

116. The individual Defendants, acting together with a majority of the City Council, possessed final policymaking authority for the City with respect to the employment and removal of the Chief of Police.

117. The constitutional violations alleged above were committed pursuant to, and themselves constitute, the official policy, custom, or decisions of final policymakers of the City.

118. The City is therefore liable for the deprivation of Plaintiff's federal rights under Monell v. Department of Social Services, 436 U.S. 658 (1978).

119. In the alternative to Plaintiff's allegations that the individual Defendants exceeded their lawful authority, the City Council, acting as a body, was the final policymaker for the City with respect to the removal of the Chief of Police, and the decisions and conduct alleged herein were the official acts and policy of the City or were subsequently ratified by the City.

120. These alternative theories are pleaded together pursuant to Rule 8(d) of the Federal Rules of Civil Procedure.

121. As a direct and proximate result of the City's policy, custom, and final decisions, Plaintiff has suffered damages as alleged herein.

## COUNT VII
### *Race Discrimination and Retaliation — 42 U.S.C. § 1981*
### (Against the Individual Defendants in their individual capacities)

122. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

123. Section 1981 guarantees all persons the same right to make, perform, enforce, and enjoy the benefits, privileges, terms, and conditions of contractual relationships, including employment relationships, free from racial discrimination and retaliation.

124. Defendants intentionally interfered with and impaired Plaintiff's contractual employment relationship with the City on the basis of his race, and retaliated against him for opposing race discrimination, including by pursuing his removal and constructively discharging him.

125. Defendants acted intentionally, willfully, and with reckless or callous disregard for Plaintiff's federally protected rights, including by persisting in their conduct after receiving express

advice of counsel, delivered publicly on February 6, 2025, that the removal they were pursuing was unlawful and discriminatory in effect.

126. Plaintiff's Hispanic identity constitutes race within the meaning of Section 1981, which protects against discrimination on the basis of ethnicity and ancestry.

127. To the extent Plaintiff's Section 1981 rights are asserted against the City, that claim is brought through 42 U.S.C. § 1983, as alleged in the municipal-liability count above, which provides the exclusive federal remedy for a violation of Section 1981 by a state actor.

128. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages as alleged herein.

**COUNT VIII**
***Hostile Work Environment — Title VII (42 U.S.C. § 2000e-2) and 42 U.S.C. § 1981***
**(Title VII against the City; § 1981 against the Individual Defendants in their individual capacities)**

129. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

130. Plaintiff was subjected to unwelcome harassment based on his national origin and race that was sufficiently severe or pervasive to alter the terms and conditions of his employment and to create an objectively and subjectively hostile or abusive working environment.

131. The hostile work environment included the racially charged conduct alleged above, including a photograph depicting Defendant Hayden using a racial slur; the individual Defendants' private communications disparaging and targeting Plaintiff; Defendant Hayden's efforts to obtain derogatory information about Plaintiff from his former employer and to obtain his call logs; the sustained public campaign to remove Plaintiff from office; and the pursuit of measures designed to strip Plaintiff of his authority as Chief.

132. The harassment was committed by individuals with supervisory and policymaking authority over Plaintiff, such that liability is imputed to the City, and was carried out personally by the individual Defendants for purposes of Section 1981.

133. The City did not exercise reasonable care to prevent or promptly correct the harassing conduct.

134. The harassment was committed by members of the City Council itself—the body vested with final authority over Plaintiff's employment—and the City maintained no meaningful mechanism by which Plaintiff could obtain correction of harassment perpetrated by the Council.

135. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by the City.

136. Plaintiff reported the individual Defendants' unlawful conduct to the Mayor, and the City failed to take effective remedial action.

137. Any further resort to internal procedures would have been futile because the harassers were themselves the governing body.

138. The hostile work environment culminated in Plaintiff's constructive discharge: the harassment, together with the official acts of the Council alleged herein, made Plaintiff's working conditions so intolerable that a reasonable person would have felt compelled to resign, and Plaintiff's resignation on May 29, 2026 was a fitting response to those conditions.

139. Plaintiff's constructive discharge is part of, and the culmination of, the single unlawful employment practice of harassment described in his administrative charge.

140. Because the harassment culminated in a tangible employment action, Plaintiff's constructive discharge, the affirmative defense recognized in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998), is unavailable to the City.

141. As a direct and proximate result of the hostile work environment, Plaintiff has suffered damages as alleged herein.

**COUNT IX**
***Declaratory Judgment, Void Action, and Reinstatement — 28 U.S.C. §§ 2201–2202; Neb. Rev. Stat. § 17-107***
**(Against the City of Valley)**

142. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

143. An actual, justiciable controversy exists between Plaintiff and the City concerning the lawfulness and validity of the actions taken to remove or force out Plaintiff as Chief of Police.

144. The City, acting through the individual Defendants, failed to comply with the exclusive, mandatory procedure for removal of the Chief of Police set forth in Neb. Rev. Stat. § 17-107(3)(b) and Valley Municipal Code § 32.22, and acted ultra vires and without lawful authority, as independent counsel confirmed on the record at the February 6, 2025 Council meeting.

145. Plaintiff is entitled to a declaration, binding on the City, that the actions to remove or force out Plaintiff were taken without lawful authority and in violation of the governing statute and ordinance, and are therefore void and of no legal effect.

146. Plaintiff is further entitled to equitable relief from the City, including an order reinstating him to the position of Chief of Police with full back pay, benefits, and seniority, or front pay in lieu thereof, and enjoining the City from giving effect to the unlawful actions.

**COUNT X**
***Tortious Interference with a Contractual or Business Relationship — Nebraska Law***
**(Against the Individual Defendants in their individual capacities)**

147. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

148. At all relevant times, a valid contractual and business employment relationship existed between Plaintiff and the City of Valley, of which the individual Defendants were aware.

149. The individual Defendants intentionally and improperly interfered with that relationship by inducing or causing its termination through Plaintiff's forced resignation, by means of unlawful, ultra vires, and discriminatory conduct.

150. Although the individual Defendants are officers of the City, they acted outside the scope of their lawful authority, for personal reasons, and with malice, and their interference was therefore neither privileged nor justified.

151. The individual Defendants' interference was the proximate cause of the termination of Plaintiff's employment relationship.

152. As a direct and proximate result of the individual Defendants' interference, Plaintiff has suffered damages as alleged herein.

## PRAYER FOR RELIEF

153. WHEREFORE, Plaintiff Bobby B. Martinez respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

a. A declaratory judgment that Defendants' actions concerning Plaintiff's removal were taken without lawful authority and in violation of Neb. Rev. Stat. § 17-107(3)(b) and Valley Municipal Code § 32.22, and are void and of no legal effect;

b. An order reinstating Plaintiff to the position of Chief of Police with full back pay, benefits, and seniority, together with appropriate injunctive relief; or, in the alternative, front pay in lieu of reinstatement;

c. Compensatory damages in an amount to be proven at trial, including damages for lost wages and benefits, lost earning capacity, emotional distress, and reputational harm;

d. Punitive damages against the individual Defendants, in their individual capacities, under 42 U.S.C. §§ 1981, 1983, and 1985, in an amount sufficient to punish and deter their unlawful conduct;

e. Pre-judgment and post-judgment interest as allowed by law;

f. Reasonable attorneys' fees, expert fees, and costs of this action pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and any other applicable provision; and

g. Such other and further relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

154. Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

155. Plaintiff requests for Place of Trial: Omaha, Nebraska.

Respectfully submitted,

BOBBY B. MARTINEZ, Plaintiff,

By: /s/ Justin T. Wayne
Justin T. Wayne, #23310
WAYNE LAW, LLC
P.O. Box 265
Omaha, NE 68102
Phone: (402) 933-6603
Fax: (402) 833-7128
justin@justinwaynelaw.com
*Attorney for Plaintiff*